**United States District Court**
**District of Connecticut**

```
-----------------------------x
                             :
MR. AND MRS. "P.", PARENTS OF :
"R.P.", A MINOR CHILD WITH    :
DISABILITIES,                 :
                             :
            Plaintiffs,       :
                             :
v.                            :     CASE NO. 3:12CV387(AWT)
                             :
THE GREENWICH BOARD OF        :
EDUCATION,                    :
                             :
            Defendant.        :
                             :
-----------------------------x
```

<u>**RULING ON MOTION TO DISMISS**</u>

Plaintiffs Mr. and Mrs. P., who are the parents of minor child R.P., have brought this action pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400 <u>et</u> <u>seq.</u>, and Section 504 of the Rehabilitation Act of 1973 ("Section 504") against the Greenwich Board of Education (the "Board") of the Greenwich Public School District.  The Board has moved to dismiss Count One to the extent that it is based on alleged violations of the IDEA's Child Find provision during school years prior to the 2009-2010 school year and Count Two, which asserts violations of Section 504.  For the reasons set forth below, the motion is being granted.

**I.   FACTUAL ALLEGATIONS AND BACKGROUND**

"The complaint, which [the court] must accept as true for

purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

The student, a thirteen year old with disabilities who requires special education, resides in Greenwich, Connecticut and currently attends Eagle Hill School ("Eagle Hill"), a special education school approved by the Connecticut Special Education Department. The student attended Riverside Elementary School ("Riverside Elementary"), in the Greenwich Public School System, for kindergarten (2004-2005), first grade (2005-2006) and fourth grade (2008-2009). In kindergarten, the student's teacher referred him for early intervention based on concerns with his lack of attention and difficulty following directions and task completion. While the student was a first grader, the parents expressed numerous concerns about the student's ability to learn and focus to numerous Board employees, including teachers, related services providers and administrators. They also expressed these concerns to Board employees when the student was in fourth grade. The parents obtained several private evaluations of the student, beginning in his preschool years, and provided them to the Board on several occasions over the years. In addition, the Board conducted its own evaluations of the student in October 2004, January 2005, April 2006, March 2009 and May 2009. The majority of these evaluations noted the

difficulties the student was having and recommended that school-based occupational therapy services be provided to the student due to his difficulty in completing written work and with other fine motor activities.

In 2009, the Board identified the student as being eligible for special education and related services pursuant to the IDEA category of "specific learning disability" at the end of the student's fourth grade year.  The Board offered the student an Individual Education Program ("IEP") with a total of 1.5 hours per week of special education services.  At the end of the April 2009 IEP meeting, the Board provided the parents with a "Consent for Special Education Placement" form to sign.  The parents allege that the form provided by the Board was written in such a manner as to indicate, if it was signed, that the parents: 1) consented to the placement of their child in special education, and 2) agreed with the IEP offered to the student.  Mrs. P. returned the signed form to the Board with the following handwritten note:  "I consent that my son is eligible for special education under the learning disability category.  I do not consent to the placement described in this IEP, because it is not appropriate to his needs."  Compl. ¶ 22.  The parents allege that because they did not agree to the placement described in the IEP and instead requested an "out of district placement" at public expense, the Board offered an IEP that

included a total of 6.5 hours per week of special education services.

The parents unilaterally enrolled the student at Eagle Hill, a special education school with a low student to teacher ratio, for the 2009-2010, 2010-2011 and 2011-2012 school years and sought reimbursement from the Board.  After the parents placed the student at Eagle Hill for the start of the 2009-2010 school year, the Board failed to observe, evaluate and provide educational services to the student.  Moreover, the Board did not offer an IEP or an IEP meeting to the parents, and did not provide any educational services to the student, for the 2010-2011 school year.

In the spring of 2011, the parents worked with the staff at Central Middle School, a public school within the Greenwich Public School District, to assess the student and discuss programs that might be appropriate for the 2011-2012 school year.  The parents considered Central Middle School's proposed IEP, which included a total of 8.25 hours per week of special education and counseling services, and discussed it with the educators at Eagle Hill.  Eagle Hill recommended not returning the student to a less restrictive setting until he had completed an additional year of support and transition at Eagle Hill.

The parents filed a hearing request with the Connecticut Department of Education's Special Education Due Process Unit on

April 21, 2011.  Paragraph 4 of the hearing request stated

"[t]he nature of the dispute is the issue of FAPE for the 2009-

2010, and 2010-2011 school years," and then described in 33

subparagraphs the events that had occurred with respect to R.P.

beginning in 2004.  Compl. Attach. 1 at ¶ 4.  The hearing

request then stated:

> 5.  The Greenwich Board of Education violated the IDEA by
> failing to meet its Child-Find obligations for all school
> years in which R. resided in Greenwich through the 2008-
> 2009 school year.  The Greenwich Board of Education further
> violated R. and his Parents' procedural safeguards by
> failing to properly and timely evaluate R. in all areas of
> suspected disability.
>
> 6.  The Greenwich Board of Education denied R. a FAPE for
> the 2009-2010 and 2010-2011 school years, including ESY and
> related services, because it did not offer a program with a
> high enough level of intensity or structure to adequately
> address his academic and emotional needs and to confer
> meaningful educational benefit.
>
> 7.  The Parents' proposed resolution is that the Board
> immediately be ordered to reimburse the Parents for all
> costs associated with R.'s attendance at the Eagle Hill
> School for the 2009-2010 and 20101-2011 school years,
> including but not limited to tuition and transportation
> costs.  In addition, they request reimbursement for all
> expenses they incurred as a result of the Board's failure
> to offer or provide a FAPE for the school years in question
> including but not limited to the cost of the psychological
> evaluation conducted by Christopher M. Bogart, Ph.D. In
> addition, the Parents request any compensatory services the
> Hearing Officer deems just and equitable for the
> deprivation of FAPE and for the Board's failure to timely
> identify R. as a child in need of special education and to
> provide in a timely manner the services necessary to
> remediate his learning disability.

Id. at ¶¶ 5, 6 and 7.

The hearing proceeded over several months.  The parents offered documentary and testamentary evidence, including three expert witnesses not employed by the Board.  The Board presented witnesses who are or were employed by the Board during the time periods in question.  The witnesses for the parents and the Board were able to describe the significant progress the student made with the highly structured, specialized instruction he received at Eagle Hill.  Thereafter, the parties submitted post-hearing briefs.

On January 30, 2012, the Hearing Officer issued her Final Decision and Order (the "Decision").  At the beginning of the Decision, the Hearing Officer stated the issues presented:

**ISSUES**: (as agreed at the prehearing conference, May 9, 2011):

1. Did the Board offer a free appropriate public education to the Student for the school years 2009-2010 and 2010-2011?
2. If not, is placement at Eagle Hill School appropriate to the Student's special education needs in the least restrictive environment?
3. If placement at Eagle Hill School is appropriate, is the Board responsible for reimbursement to the Parents for documented costs of the placement for school years 2009-2010 and 2010-2011?

**ISSUES**: (as added by agreement of the Parties, August 9, 2011):

4. Is the proposed Individualized Education Program (IEP) for the 2011-2012 school year appropriate to the Student's special education needs?
5. If not, is placement at Eagle Hill School appropriate to the Student's special education needs in the least restrictive environment?

6. If placement for 2011-2012 at Eagle Hill is appropriate, is the Board responsible for funding that placement?

Compl. Attach. 3 at 1.

As the conclusion of the Decision, the Hearing Officer

wrote:

> The IEPS and placements developed by the School for the Student for school years 2009-2010 and 2011-2012, were appropriate to his identified special education needs.
>
> Because Student was not enrolled in the Board's school during 2010-2011 and there was no contact suggesting he would re-enroll during that school year, the Board was not required to prepare an IEP for 2010-2011.
>
> Because the Board's programs have been found appropriate, it is not necessary to address the appropriateness of the programs provided at Eagle Hill School.
>
> Because the Board's programs have been found appropriate, no reimbursement of the Eagle Hill School placement by the School District is ordered.

Id. at 23.

The plaintiffs bring two causes of action against the Board.  Count One appeals the Decision.  The parents contend that there are numerous examples where the Hearing Officer applied the incorrect legal standard.  Moreover, they contend that the Hearing Officer predicated her decision on an erroneous conclusion that the parents never consented to special education services; the parents argue that they consented to R.P. receiving special education services but disagreed with the proposed IEP.  Count Two alleges that the Board discriminated against the student and his parents by failing to provide the

student with appropriate services and/or evaluations under the IDEA in violation of Section 504.

## II.  LEGAL STANDARD

The Board argues in support of its motion to dismiss that the plaintiffs have failed to exhaust their administrative remedies.  In this regard, the Board raises a concern as to whether a failure to exhaust administrative remedies divests the court of subject matter jurisdiction or is, instead, an affirmative defense.  In Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 243 (2d Cir. 2008), the court held that "[f]ailure to exhaust administrative remedies deprives the court of subject matter jurisdiction.  Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 483 (2d Cir. 2002) (citing Hope v. Cortines, 69 F.3d 687, 688 (2d Cir. 1995))."  "Recent Supreme Court rulings, including Eberhart v. United States, 546 U.S. 12, 16 [] (2005) and Kontrick v. Ryan, 540 U.S. 443, 455 [] (2004), have called into question whether the failure to exhaust administrative remedies under the IDEA deprives the court of jurisdiction, or whether [it] is an affirmative defense which may be waived if not raised..." B.J.S. v. State Educ. Dept./The Univ. of the State of New York, 815 F. Supp. 2d 601, 603 (W.D.N.Y. 2001).  However, the Second Circuit addressed this concern in Baldessarre v. Monroe Cent. Sch. Dist.:

> The District Court's holding that the plaintiffs' failure
> to exhaust the IDEA's administrative remedies required
> dismissal of their complaint was clearly compelled by our
> Circuit precedent. The plaintiffs apparently do not contest
> this, but, rather, request that we abandon this precedent
> and instead adopt the view of the Court of Appeals for the
> Ninth Circuit. See Payne v. Peninsula Sch. Dist., 653 F.3d
> 863, 871 (9th Cir. 2011) (en banc) ("Non-IDEA claims that
> do not seek relief available under the IDEA are not subject
> to the exhaustion requirement, even if they allege injuries
> that could conceivably have been redressed by the IDEA.").
> We decline to do so. "This panel is bound by the decisions
> of prior panels until...they are overruled either by an
> en banc panel of our Court or by the Supreme Court." In re
> Zarnel, 619 F.3d 156, 168 (2d Cir. 2010) (quotation marks
> omitted).

No. 11-CV-2835, 2012 WL 4039986, at *2 (2d Cir. Sept. 3, 2012).

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. See Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Otherwise, the standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are

identical.  See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128
(2d Cir. 2004).

## III. DISCUSSION

### A. Count One: Appeal as to School Years Prior to 2009-2010

The Board maintains that the court does not have subject
matter jurisdiction over the alleged violations of the Child
Find provision for any school year prior to the 2009-2010 school
year because the parents did not exhaust their administrative
remedies with respect such school years.  The Board points to
the fact that, as memorialized in the Decision, the Hearing
Officer and the parties agreed at the prehearing conference that
only school years 2009-2010 and 2010-2011 were at issue, and the
parties subsequently agreed to add the 2011-2012 school year.
In addition, those were the only school years addressed when the
Hearing Officer articulated, at the end of the Decision, her
final decision and order.

The "IDEA requires states, which receive grants under the
Act, to provide children with disabling conditions with 'a free
appropriate education' in the least restrictive environment
suitable for the child."  Heldman v. Sobol, 962 F.2d 148, 150
(2d Cir. 1992).  "A local education agency ('LEA') that receives
federal funding under the IDEA has what is called a 'Child Find'
obligation, which is a duty to identify, locate, and evaluate
children who have a disability or who are suspected to have a

disability." A.P. v. Woodstock Bd. of Educ., 572 F. Supp. 2d
221, 224 (D. Conn. 2008) (citing 20 U.S.C. § 1412(a)(4)(A)).
The Child Find provision states:

> All children with disabilities residing in the State,
> including children with disabilities who are homeless
> children or are wards of the State and children with
> disabilities attending private schools, regardless of the
> severity of their disabilities, and who are in need of
> special education and related services, are identified,
> located, and evaluated and a practical method is developed
> and implemented to determine which children with
> disabilities are currently receiving needed special
> education and related services.

20 U.S.C. § 1412(a)(3)(A).

The IDEA "establishes various procedural safeguards that
guarantee parents [of students with disabling conditions] both
an opportunity for meaningful input into all decisions affecting
their child's education and the right to seek review of any
decisions they think inappropriate." Honig v. Doe, 484 U.S.
305, 311-312 (1988).  "One of those safeguards is the
requirement that the educational needs of a disabled child be
set forth at least annually in an individualized education
program ('IEP') developed by a Planning and Placement Team
('PPT'), composed of inter alia, parents, teachers, and school
officials." Avoletta v. City of Torrington, No. 07-CV-841, 2008
WL 905882, at *4 (D. Conn. Mar. 31, 2008) (citing 20 U.S.C. §
1414(d)(4)(A)(1), (1)(B)).  "If a dispute arises between a
school board and a parent as to a child's IEP, either party may

request an impartial due process hearing conducted by the state educational agency." Id. (citing 20 U.S.C. § 1415(b)(6)); see also Conn. Gen. Stat. §§ 10-76h(a)(1). The Regulations of Connecticut State Agencies provide, among other things, that the "prehearing conference shall simplify or clarify the issues in dispute" and that the "hearing officer may receive any oral, documentary or tangible evidence, but the hearing officer shall exclude irrelevant, immaterial or unduly repetitious evidence." Conn. Agencies Regs. §§ 10-76h-7, 10-76h-15. "Thereafter, either party may bring a civil action in state or federal court for judicial review of the findings and decision of the due process hearing." Avoletta, 2008 WL 905882, at *4 (citing 20 U.S.C. § 1414(i)(2)(A)).

"[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than IDEA (such as the ADA or the Rehabilitation Act)." Polera, 288 F.3d at 481. This exhaustion requirement applies whenever a plaintiff "seek[s] relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l). "[R]elief that is also available" has been broadly construed to "mean relief for the events, conditions, or consequences of which the person complains, not necessarily relief of the kind the person prefers." Polera, 288

-12-

F.3d at 488 (quoting <u>Charlie F. v. Bd. of Educ. of Skokie Sch.</u> <u>Dist.</u>, 98 F.3d 989, 991-92 (7th Cir. 1996)).

The purpose of the exhaustion requirement is to "channel disputes related to education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." <u>Id.</u> at 487.  The exhaustion requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes." <u>Heldman</u>, 962 F.2d at 159.  "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." <u>Polera</u>, 288 F.3d at 487 (quoting <u>Hoeft v. Tucson</u> <u>Unified Sch. Dist.</u>, 967 F.2d 1298, 1303 (9th Cir. 1992)).  "If the administrative process is not successful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court." <u>J.S. v.</u> <u>Attica Cent. Sch.</u>, 386 F.3d 107, 113-14 (2d Cir. 2004) (citing <u>Riley v. Ambach</u>, 668 F.2d 635, 640 (2d Cir. 1981)).

The plaintiffs contend that they have exhausted their administrative remedies with respect to the alleged violations of the Child Find provision as to all the school years at issue because the purposes of exhaustion have been served.  They argue as follows:

> With regard to Plaintiffs allegations of child find violations, the purposes of exhaustion have been fulfilled. A complete factual record was developed at the administrative level on this issue. Beginning with their hearing request, Plaintiff clearly and extensively laid out their claims and allegations of violations of Child Find and the Board's failure to evaluate and identify the Student. (Complaint at Attachment 1). An administrative hearing was held, during which the plaintiffs offered documentary and testamentary evidence in support of all their claims, including their Child Find, constituting a substantial administrative record on this issue. The Board likewise presented evidence on these issues. Again in their post-hearing brief, the Plaintiff thoroughly set forth their Child Find argument, devoting five pages to this issue alone (Complaint at Attachment 2 at 6-11).
> The Hearing Officer made numerous factual findings relative to the issue of Child Find in her Final Decision and Order. The Hearing Officer's Conclusions of Law, although not nearly as extensive as her Findings of Fact, also addressed Plaintiffs' claims that the Defendant failed to properly evaluate R.P. over the course of many years. (Id., Conclusions of Law, ¶ 3). The Hearing Officer found that the Parents "preempted school evaluations" and "limited the number and type of evaluative tests that have been used with the Student" by obtaining a private evaluation of R.P. and withdrawing consent to evaluate very early in R.'s elementary school education. (Id., Complaint at ¶ 50).
> Similarly, in the Discussion section, the Hearing Officer addressed the Parents' allegations regarding the Board's failure to evaluate and identify the Student up until the time he was determined eligible for special education in April of 2009. (Id. at Attachment 3 at 22).

Pls.' Mem. Opp. to Mot. to Dismiss 5-6.

The court agrees that there was a factual record developed at the administrative level that is relevant to the Child Find provision with respect to the school years prior to 2009-2010, and that the record includes 32 Findings of Fact and the Conclusion of Law pointed to by the plaintiffs.  However, the court cannot be confident that it is a "complete" factual record on that issue as to the those years because the court has no way of knowing what else would have been put in the record, and in the Decision, if both sides and the Hearing Officer had understood that the issues to be decided in the due process hearing included whether the Board had violated the Child Find provision during school years prior to 2009-2010.  The Board raises a reasonable concern when it states:

> Had the defendant known, during the due process hearing, that it was defending a Child Find claim reaching back to the Student's third birthday – the first date on which the Student could have been eligible for services – it certainly would have presented its case in a manner reflective of such an extensive claim.

Def.'s Reply Mem. & Supp. Mot. to Dismiss 5.  The plaintiffs ignore the important distinction between the issues that are being contested and the evidence that is relevant to those issues--a distinction which is recognized in the regulation that states the statute of limitations governing due process hearings.  See Conn. Agencies Regs. § 10-76h-4.[1]

_____

[1] Sec. 10-76h-4 provides:

The court also agrees with the plaintiffs that they described at length in their request for a hearing events they maintained show that, and devoted a number of pages in their post-hearing brief to their argument that, the Board had failed to meet its obligations under the Child Find provision in all school years through the 2008-2009 school year.  However, the plaintiffs never alerted the Hearing Officer or the Board that the Hearing Officer was deciding or the Board was defending against a legal claim to that effect.  The plaintiffs' post-hearing brief concludes as follows:

> The Parents respectfully request that the Hearing Officer rule in R.'s favor on all Issues presented for determination, and to Order reimbursement for any and all costs associated with providing R. an appropriate program at Eagle Hill for the 2009-2010, 2010-2011, and 2011-2012 school years.  We also request compensatory education as described above.  Finally, the Parents request such further compensatory or equitable relief which the Hearing Officer deems just.

Compl. Attach. 2 at 18.  There was no request in the post-hearing brief to add an issue, and the Hearing Officer and the Board had every reason to conclude that the plaintiffs' contentions with respect to school years prior to 2009-2010 were

---

(a) A party shall have two years to request a hearing from the time the public agency proposed or refused to initiate or change the identification, evaluation or educational placement of, or the provision of a free appropriate public education to the child....
(b) This limitation does not apply to evidence, provided admission of such evidence shall meet evidentiary considerations such as relevance and materiality and shall be ruled upon by the hearing officer.

being offered as relevant evidence but not as an additional issue.

Relying on Laddie C. v. Dep't of Educ., No. 08-CV-00309, 2009 WL 855966 (D. Haw. Mar. 27, 2009), the plaintiffs argue that "[t]he exhaustion requirement is satisfied when issues brought before the court have been addressed to some degree by an administrative hearing officer..." Opp. 7.  In Laddie C., the court observed that:

> Laddie C raised the claim in the closing brief following
> an administrative proceeding. As a result, there is no
> clear record on this issue, and there are no factual
> findings or conclusions of law by the hearings officer on
> this issue to appeal to this court. This court recognizes
> that Laddie C. could arguably be said to have waived the
> issue. However, this court believes that, in the IDEA
> context, the court should construe claims liberally and
> avoid any crabbed or cramped reading that might
> disadvantage a child.

Id. at *6.  However, the court in Laddie C. did not conclude that the claims had been exhausted, but rather remanded the matter to the hearing officer for a determination on the claim.

In Myslow v. New Milford Sch. Dist., No. 03-CV-496, 2006 WL 473735, at *11 (D. Conn. Feb. 28, 2006), a case the Board relies on and the plaintiffs see as distinguishable, the court found itself in a situation where "[t]he parties did not cite...any cases addressing the scope of the IDEA exhaustion requirement and its application to situations such as this one, where a plaintiff alleges a prolonged course of educational failures but

did not request due process with respect to all, or even a
majority, of the school years in which educational deprivations
occurred."  The court decided that "[i]n the absence of any
decisions directly on point and in an effort to assess whether
Plaintiffs have complied with their exhaustion obligations, the
Court [seeks] guidance from the purposes underlying the IDEA
exhaustion requirement."  Id.  The court then used that guidance
to assess the record from the administrative process.  It
analyzed the "Final Decision and Order" and concluded that:

> although the questions presented to the Hearing Officer
> only explicitly referred to Travis' sixth grade education
> plan, the facts before her clearly involved the substance
> of earlier IEPs and the Hearing Officer expressly found
> that the School Defendants did not provide Travis with a
> free appropriate public education during either the fifth
> or sixth grades.

Id. at *12.  In explaining that conclusion, the court quoted two
parts of the "Conclusion of Law."  Here the court has taken a
similar approach, but based on the specific contents of the
documents from the administrative proceeding that are before the
court, comes to a conclusion different than the one reached by
the court in Myslow with respect to that plaintiffs' public
education during fifth grade.  However, the conclusion reached
here is the same conclusion reached by the court in Myslow with
respect to that plaintiffs' education in earlier years.

The approach to the exhaustion requirement urged by the
plaintiffs here undermines the requirement in Conn. Agencies

Regs. § 10-76h-7 that there be a prehearing conference for the purpose of simplifying or clarifying the issues in dispute.  See Conn. Agencies Regs. § 10-76h-7 ("The prehearing conference shall simplify or clarify the issues in dispute.")  Moreover, the approach urged by the plaintiffs undermines the purposes of the exhaustion requirement in that the development of a complete factual record is not furthered when both the opposing party and the hearing officer are misled as to what is a legal claim being advanced by a party as opposed to a mere factual contention.

Based on the plaintiffs' request for a hearing, their post-hearing brief, and the contents of the Decision, the court concludes that the plaintiffs here did not exhaust their administrative remedies with respect to alleged violations by the Board of the Child Find provision for any school year prior to the 2009-2010 school year.  Thus, any such claim is being dismissed because the court lacks subject matter jurisdiction.

**B. Count Two: Section 504**

The Board argues that the court does not have subject matter jurisdiction over the Section 504 claim because the plaintiffs did not exhaust their administrative remedies.  The court agrees.

Section 504 prohibits discrimination on the basis of a disability "under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  While actions brought

under this section generally do not require exhaustion of
administrative remedies, see Henchey v. North Greenbush, 831 F.
Supp. 960, 968 (N.D.N.Y. 1993), an exception to this general
rule is set forth in Title 20 U.S.C. § 1415(l), which provides:

> Nothing in this chapter shall be construed to restrict or
> limit the rights, procedures, and remedies available under
> the Constitution, title V of the Rehabilitation Act of 1973
> [29 U.S.C.A. § 790 et seq.], or other Federal statutes
> protecting the rights of handicapped children and youth,
> *except that* before the filing of a civil action under such
> laws seeking relief that is also available under this
> subchapter, the procedures under subsections (b)(2) and (c)
> of this section *shall* be exhausted to the same extent as
> would be required had the action been brought under this
> subchapter.

20 U.S.C. § 1415(l) (emphasis added).

The plaintiffs argue that because they exhausted their
administrative remedies regarding their IDEA claims, they have
also exhausted their administrative remedies with respect to the
FAPE-related Section 504 claim because the Section 504 claim is
based on issues and facts underlying the IDEA claims.  "Since
the plaintiff's instant claims arise out of the same set of
facts as their IDEA claims, they are subject to the underlying
administrative proceeding and judicial review of the IDEA
claims."  Mr. & Mrs. D. v. Southington Bd. of Educ., 119 F.
Supp. 2d 105, 115 (D. Conn. 2000).  The plaintiffs here did not
present the Hearing Officer with a claim of discrimination in
violation of Section 504 or any claim of intentional conduct,
bad faith or deliberate indifference.  No such issue was

-20-

included among the issues to be decided or mentioned in the
Hearing Officer's statement of her final decision and order.
Nor is there any reference to Section 504 in the conclusions of
law or discussion sections of the Decision.  Moreover, there is
no reference to a claim of discrimination in violation of
Section 504 or any other claim of intentional conduct, bad faith
or deliberate indifference either in the plaintiffs' request for
a due process hearing or in their post-hearing brief.  Because
the plaintiffs failed to raise their Section 504 claim during
the due process hearing, they have not exhausted their
administrative remedies with respect to that claim.

     The plaintiffs rely on three cases, two of which undermine
their position and one of which is inapposite.  The plaintiffs
rely on Mr. and Mrs. D..  However, as noted above, the court
there recognized that to the extent that the Section 504 claim
arises out of the same set of facts as the IDEA claim, it is
subject to the requirement of exhaustion of administrative
remedies.  The plaintiffs also rely on M.K. v. Sergi, 554 F.
Supp. 2d 201 (D. Conn. 2008).  However, there the court noted
with respect to the Section 504 and other claims that were
premised on two particular contentions that "[b]oth of these
issues were addressed to some degree by the Hearing Officer in
her first decision.  To that extent, there has been an
exhaustion of administrative remedies and the Court will

-21-

consider them." Id. at 219-20. Finally, the plaintiffs rely on Brennan v. Reg'l Sch. Dist. No. 1, 531 F. Supp. 2d 245 (D. Conn. 2008), citing it as an example of a case where "FAPE related Section 504 claims raised for the first time on appeal of administrative hearing decision were allowed." Opp. 10. However, the plaintiff concedes that there is no indication in Brennan as to whether the issue of exhaustion of administrative remedies was ever raised in relation to the Section 504 claims.

Therefore, the Section 504 claim is being dismissed for the reason that the court lacks subject matter jurisdiction because administrative remedies were not exhausted.

IV.  **CONCLUSION**

Accordingly, the Defendant's Motion to Dismiss (Doc. No. 15) is hereby GRANTED. The portion of Count One as to school years prior to the 2009-2010 school year and Count Two are dismissed.

It is so ordered.

Signed this 14th day of March, 2013 at Hartford, Connecticut.

_____/s/_____
      Alvin W. Thompson
United States District Judge